# ORIGINAL

thomaslutzpet

LEONARDO M. RAPADAS
United States Attorney
MIKEL SCHWAB
Assistant U.S. Attorney
Suite 500, Sirena Plaza.
108 Hernan Cortez Ave.
Hagåtña, Guam 96910
PHONE: 472-7332
FAX: 472-7334

Attorneys for the United States of America

FILED
DISTRICT COURT OF GUAM
OCT 1 7 2006
MARY L.M. MORAN
CLERK OF COURT

IN THE UNITED STATES DISTRICT COURT

FOR THE TERRITORY OF GUAM

| | |
|---|---|
| UNITED STATES OF AMERICA, | ) MAGISTRATE CASE NO. **06 - 00025** |
| Plaintiff, | ) |
| | ) |
| vs. | ) **PETITION FOR WRIT** |
| | ) **OF REMOVAL** |
| THOMAS ARTHUR LUTZ, | ) |
| Defendant. | ) |

Petitioner, United States Attorney for the District of Guam, respectfully shows this Court that:

1. On July 15, 2005, the United States Attorney's Office, for the Western District of Wisconsin filed a Second Superseding Indictment charging the defendant with Conspiracy, Aiding & Abetting, Mail Fraud and False Claims in violation of Title 18, United States Code, Sections 371, 2, 1341 and 287;

2. On July 15, 2005, U.S. Clerk of Court for the U.S. District Court for the Western District of Wisconsin, issued a no bail warrant of arrest for the defendant to be brought to the Western District of Wisconsin to answer charges of the indictment. A copy of the indictment and warrant for arrest are attached and incorporated herein as Exhibit 1.

3. On October 14, 2006, the defendant arrived on Guam and was arrested.

1       WHEREFORE, petitioner prays this Court to issue a writ of removal pursuant to Rule 5(c) for

2 said defendant from the District of Guam to the Western District of Wisconsin.

3       DATED this 17 day of October 2006.

                           LEONARDO M. RAPADAS
                           United States Attorney
                           Districts of Guam and NMI

            By:

                     MIKEL W. SCHWAB
                     Assistant U.S. Attorney

SEALED

IN THE UNITED STATES DISTRICT COURT

FOR THE WESTERN DISTRICT OF WISCONSIN

| | |
|---|---|
| UNITED STATES OF AMERICA | SECOND SUPERSEDING INDICTMENT |
| v. | Case No. <u>05-CR-072-C</u> |
| | 18 U.S.C. § 1341 |
| | 18 U.S.C. § 371 |
| HEALTH VISIONS CORPORATION and | 18 U.S.C. § 287 |
| THOMAS ARTHUR LUTZ, | 18 U.S.C. § 2 |
| | 18 U.S.C. § 982 |
| Defendants. | |

A TRUE COPY, Certified
4-19-06
Theresa M. Owens, Clerk
U.S. District Court
Western District of Wisconsin
By _L. Jensen_
Deputy Clerk

THE GRAND JURY CHARGES:

### COUNTS 1 - 32

### MAIL FRAUD

### GENERAL ALLEGATIONS

1.      At all times material to this indictment:

(a)     The defendant HEALTH VISIONS CORPORATION ("HVC"), was

a Philippine corporation, incorporated in the Republic of the Philippines in 1997, which

provided various medical services in the Philippines.  As such, HVC was an authorized

TRICARE provider of medical services and eligible to submit bonafide TRICARE claims

to Wisconsin Physicians Service (WPS) for covered medical services actually provided

to eligible beneficiaries.  In addition, HVC also billed TRICARE for services provided by

other medical providers.

(b)     The defendant, THOMAS ARTHUR LUTZ ("LUTZ"), an American,

CC: DEFT., USA, USM, PROBA. SLC, BBC

Date ___ JUL 1 5 2005

By _L. Kampen_

EXHIBIT 1

Case 1:06-mj-00025    Document 1    Filed 10/17/2006    Page 3 of 29

lived in Olongapo City, Republic of the Philippines. LUTZ was an original incorporator and stock holder of HVC and acted as an administrator and representative of HVC. On or about September 26, 2003, LUTZ was named president of HVC and was appointed as the Chief Executive Officer of HVC in 2004.

(c)     Health Trust International Corporation was a Philippine corporation, incorporated in 1998, whose primary purpose was to engage in the business of promoting and developing medical and health related services. HVC claimed to be a division of Health Trust International and offered a supplemental insurance policy to TRICARE beneficiaries through Health Trust International. The supplemental insurance was advertised to cover the cost of any deductible and cost share normally paid by the beneficiary for services covered by TRICARE. In 2003, the name of Health Trust International Corporation was changed to Health Plans International Corporation. In 2003, most of the board of directors of Health Trust International were the same as the board of HVC.

(d)     The Civilian Health and Medical Program of the Uniformed Services ("CHAMPUS") was a federally-funded health care benefit program. CHAMPUS was established to help pay for civilian medical care received by eligible Department of Defense beneficiaries, including military retirees and their dependents. On October 1, 1997, the name of CHAMPUS was changed to TRICARE, but, in all material respects relevant to this indictment, the program remained the same.

(e)     Under TRICARE, eligible military retirees were not required to pay

2

any premiums for these benefits. Instead, they were responsible only for the payment of: (1) an annual deductible amount and (2) certain "cost sharing" amounts constituting up to 25% of the total charges, until such time as the total charges exceeded a set dollar amount.

 (f) The Department of Defense contracted with private companies to act as contractors to help administer the TRICARE program, to process claims, and to pay claims. Beginning on or about July 1, 1990, and continuing during all times material to this indictment, a contractor known as Wisconsin Physicians Service ("WPS"), located at Madison in the Western District of Wisconsin, processed and paid TRICARE claims.

 (g) Under Department of Defense TRICARE regulations, WPS contracted to pay TRICARE claims when it was established that the medical service claimed was: (1) a covered TRICARE benefit; (2) performed by an authorized TRICARE provider; and (3) medically necessary. TRICARE does not pay for fees for agency billing on behalf of a provider.

 (h) Authorized medical service providers ("providers") who provided medical services to TRICARE beneficiaries, and those persons or entities submitting claims for payment to WPS using a claim form, certified the truth of the claim information by signing the claim.

 (i) WPS, after processing a claim, sent to the beneficiary or the provider a check or bank draft in payment of the claim, along with an Explanation of Benefits

3

statement ("EOB").  The EOB contained, among other things, a statement of the action

taken on the claim, the claim number, the social security number of the retiree, the name

of the retiree or beneficiary, the name of the provider, a description of the services

allegedly rendered, the amounts claimed for the alleged services, the amounts allowed

by TRICARE, the amounts, if any, of any deductible or cost share to be paid by the

beneficiary, and the amount paid by TRICARE.

### THE SCHEME

2.      On or about, October 1, 1998 and continuing to in or about August 2004 at

Madison, in the Western District of Wisconsin, in the Philippines, and elsewhere, the

defendants,

HEALTH VISIONS CORPORATION and
THOMAS ARTHUR LUTZ,

and others known and unknown to the grand jury, devised and intended to devise a

scheme to defraud and to obtain money from the TRICARE program through WPS by

means of false and fraudulent pretenses and representations, well knowing that said

pretenses and representations were false when made.

3.      It was part of the scheme, as detailed below, that HVC and LUTZ:

(a)      Entered into a kickback agreement with a medical provider in the

Philippines in which the provider, at the request of HVC and LUTZ, paid 50% of the

amount of the bills for medical services rendered to TRICARE patients referred by HVC

back to HVC;

(b)      Inflated the bills of other providers by one hundred percent or more

4

before submitting the bills to WPS;

      (c)    Created a sham insurance program to circumvent TRICARE's requirement that beneficiaries pay a deductible and cost share; and

      (d)    Submitted to WPS fictitious and fraudulent TRICARE claims falsely claiming that beneficiaries had been hospitalized and had been rendered services.

    4.    It was part of this scheme to defraud that:

      (a)    Defendants HVC and LUTZ referred TRICARE beneficiaries to medical providers in the Philippines for medical services. It was a further part of the scheme that between October 1, 1998 and June 20, 2000, LUTZ, on behalf of HVC, agreed to receive monetary remuneration for the referral of patients to a doctor, known to the grand jury as Doctor A, for medical services. As part of the agreement, Dr. A kickbacked or rebated fifty percent (50%) of the amount of the claim for services back to HVC for sending clients to Dr. A's medical facility. It was further part of the scheme that Doctor A's medical facility became one of two preferred facilities in the Olongapo region of the Republic of the Philippines for HVC. It was further part of the scheme that, once the treatment was completed, Dr. A doubled the amount of the bill for services rendered and submitted the bill to HVC. HVC paid Dr. A the face value of the doubled bill. Dr. A then kickbacked or rebated to HVC 50% of the amount paid to him by HVC. HVC then submitted a bill for services provided by Dr. A to WPS in Madison, Wisconsin, in the Western District of Wisconsin, for payment of the claim.

      (b)    From 2000 through August 2004, HVC also provided so-called

5

billing services to other medical providers in the Philippines without receiving a

kickback or rebate.  In those cases, HVC referred TRICARE beneficiaries to the medical

facility or provider.  The medical provider rendered medical services to the TRICARE

beneficiary and submitted the bill for services to HVC.  In most cases, HVC then paid the

medical provider the face value of the bill.  On other occasions, HVC submitted the bill

to WPS in Madison, Wisconsin, and then paid the provider once HVC was paid by WPS.

It was a further part of the scheme to defraud that, prior to sending the claim for services

to WPS, HVC and LUTZ increased the amount of the actual bill from the medical

provider, in virtually every case, by at least 100% or more and, on one occasion, over

1000%.  HVC and LUTZ, however, only paid the medical provider the amount of the

actual bill and not the increased amount which HVC and LUTZ billed WPS.  In this

manner, HVC and LUTZ falsely represented the services rendered by the increased

amount of the bill.  Any alleged service, represented by the increased amount, did not

constitute a covered and necessary medical service, which defendants well knew would

not otherwise be paid by WPS.  By such action, defendants further claimed, under false

pretenses, that the amount claimed for the services rendered was as represented, when

in fact, the actual bill was for covered necessary medical services, and at a much lower

amount.

      (c)    HVC offered supplemental insurance to TRICARE beneficiaries,

originally through the Health Trust Corporation.  This supplemental insurance was

advertised to cover both the deductible and the amount of any cost share normally paid

6

by the beneficiary as a result of receiving medical treatment. The cost of the

supplemental insurance varied but was eventually set as high as $100 per person per

year depending on the age of the person. The supplemental insurance contained no

deductibles and no limit on the amount it covered. In 2003, HVC announced that the

Health Trust International Corporation was being replaced by Health Plans

International. HVC claimed Health Plans International was a separate entity from HVC.

In truth and in fact, the supplemental insurance premiums were not commensurate with

the risk of loss associated with the possible claims by TRICARE beneficiaries, and as

such, it was a sham program. The sham supplemental insurance program, however,

allowed HVC to attract more TRICARE beneficiaries and avoid complaints by TRICARE

beneficiaries about the cost of services.

      (d)    Between 1999 and May 6, 2004, HVC submitted to WPS fictitious

and fraudulent TRICARE claims. The bogus claims falsely represented that TRICARE

beneficiaries had been hospitalized at a particular clinic in the Philippines and had

received a variety of medical services. Contrary to the representations in the claims, the

clinic had not provided the hospitalization and medical services described in the claims.

      5.    From in or about October 1998 through in or about August 2004 , as part of

the above described scheme, HVC and LUTZ submitted claims to WPS for alleged

medical services knowing the claims were fraudulent and otherwise improper for the

reasons indicated above.

      6.    As a result of the of the above described fraudulent scheme, HVC and

7

LUTZ submitted over 400 fraudulent claims for in excess of $1,000,000.

7.     On or about the following dates, in the Western District of Wisconsin, defendants HVC and THOMAS ARTHUR LUTZ, for the purpose of executing and attempting to execute the scheme to defraud, knowingly caused mail matter, specifically, checks in payment of the medical claims, described below, to be delivered by the United States Postal Service according to the directions thereon, as described below:

| Count | Claim Number | Approximate Date | Mailing |
|-------|--------------|------------------|---------|
| 1 | 2000154 PH 02008 | June 8, 2000 | An envelope from Wisconsin Physician Services, in the Western District of Wisconsin, addressed to Afable Hospital, 3610 Buttonwood Dr., Suite 200, Columbia, Missouri, 65201-3721, containing check no. Y1075766 in the amount of $9819.15, in payment of the claim in which an unlawful kickback was paid to HVC. |
| 2 | 2000172 PH 02632 | June 29, 2000 | An envelope from Wisconsin Physician Services, in the Western District of Wisconsin, addressed to Afable Hospital, 3610 Buttonwood Dr., Suite 200, Columbia, Missouri, 65201-3721, containing check no. Y1082570 in the amount of $6181.12, in payment of the claim in which an unlawful kickback was paid to HVC. |
| 3 | 2000194 PH 02404 | July 15, 2000 | An envelope from Wisconsin Physician Services, in the Western District of Wisconsin, addressed to Afable Hospital, 3610 Buttonwood Dr., Suite 200, Columbia, Missouri, 65201-3721, containing check no. Y1086624 in the amount of $12538.13, in payment of the claim in which an unlawful kickback was paid to HVC. |
| 4 | 2000221 PH 02754 | August 23, 2001 | An envelope from Wisconsin Physician Services, in the Western District of Wisconsin, addressed to Afable Hospital, 3610 Buttonwood Dr., Suite 200, Columbia, Missouri, 65201-3721, containing check no. Z1110212 in the amount of $3020.58, in payment of the claim in which an unlawful kickback was paid to HVC. |

| Count | Claim Number | Approximate Date | Mailing |
|---|---|---|---|
| 5 | 2000194 PH 02397 | August 29, 2001 | An envelope from Wisconsin Physician Services, in the Western District of Wisconsin, addressed to Afable Hospital, 3610 Buttonwood Dr., Suite 200, Columbia, Missouri, 65201-3721, containing check no. Z1112213 in the amount of $2720.95, in payment of the claim in which an unlawful kickback was paid to HVC. |
| 6 | 2000292 PH 02602 | October 23, 2000 | An envelope from Wisconsin Physician Services, in the Western District of Wisconsin, addressed to Afable Hospital, 3610 Buttonwood Dr., Suite 200, Columbia, Missouri, 65201-3721, containing check no. Z1007152, in the amount of $6645.00, in payment of the claim in which an unlawful kickback was paid to HVC. |
| 7 | 2001194 PH 01629 | July 16, 2001 | An envelope from Wisconsin Physician Services, in the Western District of Wisconsin, addressed to Angeles Medical Center, 3610 Buttonwood Dr., Suite 200, Columbia, Missouri, 65201-3721, containing check no. Z1095627 in the amount of $6461.37 in payment of the claim. |
| 8 | 2001145 PH 02631 | May 30, 2001 | An envelope from Wisconsin Physician Services, in the Western District of Wisconsin, addressed to Angeles Medical Center, 3610 Buttonwood Dr., Suite 200, Columbia, Missouri, 65201-3721, containing check no. Z1080454 in the amount of $3554.71 in payment of the claim. |
| 9 | 2001134 PH 01001 | June 1, 2001 | An envelope from Wisconsin Physician Services, in the Western District of Wisconsin, addressed to Angeles Medical Center, 3610 Buttonwood Dr., Suite 200, Columbia, Missouri, 65201-3721, containing check no. Z1081572 in the amount of $13250.84 in payment of the claim. |
| 10 | 2004176 PH 01762 | June 29, 2004 | An envelope from Wisconsin Physician Services, in the Western District of Wisconsin, addressed to Cardinal Santos Medical Center, 3610 Buttonwood Dr., Suite 200, Columbia, Missouri, 65201-3721, containing check no. D1209483 in the amount of $2160.51 in payment of the claim. |
| 11 | 2003274 PH 01808 | October 4, 2003 | An envelope from Wisconsin Physician Services, in the Western District of Wisconsin, addressed to Cardinal Santos Medical Center, 3610 Buttonwood Dr., Suite 200, Columbia, Missouri, 65201-3721, containing check no. D1005702 in the amount of $11634.55 in payment of the claim. |

9

| Count | Claim Number | Approximate Date | Mailing |
|-------|--------------|------------------|---------|
| 12 | 2003267 PH 02497 | October 1, 2003 | An envelope from Wisconsin Physician Services, in the Western District of Wisconsin, addressed to Cardinal Santos Medical Center, 3610 Buttonwood Dr., Suite 200, Columbia, Missouri, 65201-3721, containing check no. D1001401 in the amount of $7524.68 in payment of the claim. |
| 13 | 2003337 PH 03276 | December 16, 2003 | An envelope from Wisconsin Physician Services, in the Western District of Wisconsin, addressed to Philippine Heart Center, 3610 Buttonwood Dr., Suite 200, Columbia, Missouri, 65201-3721, containing check no. D1057418 in the amount of $83643.57 in payment of the claim. |
| 14 | 2003171 PH 01279 | July 16, 2003 | An envelope from Wisconsin Physician Services, in the Western District of Wisconsin, addressed to Philippine Heart Center, 3610 Buttonwood Dr., Suite 200, Columbia, Missouri, 65201-3721, containing check no. G1172928 in the amount of $44958.02 in payment of the claim. |
| 15 | 2001060 PH 01813 | March 5, 2001 | An envelope from Wisconsin Physician Services, in the Western District of Wisconsin, addressed to Philippine Heart Center, 3610 Buttonwood Dr., Suite 200, Columbia, Missouri, 65201-3721, containing check no. Z1049713 in the amount of $3949.65 in payment of the claim. |
| 16 | 2004188 PH 02929 | July 12, 2004 | An envelope from Wisconsin Physician Services, in the Western District of Wisconsin, addressed to Sunrise Hill Therapeutic Community, 3610 Buttonwood Dr., Suite 200, Columbia, Missouri, 65201-3721, containing check no. D1217896 in the amount of $2343.68 in payment of the claim. |
| 17 | 2002121 PH 01717 | May 4, 2002 | An envelope from Wisconsin Physician Services, in the Western District of Wisconsin, addressed to Sunrise Hill Therapeutic Community, 3610 Buttonwood Dr., Suite 200, Columbia, Missouri, 65201-3721, containing check no. F1098120 in the amount of $2036.45 in payment of the claim. |
| 18 | 2004131 PH 01358 | May 13, 2004 | An envelope from Wisconsin Physician Services, in the Western District of Wisconsin, addressed to Sunrise Hill Therapeutic Community, 3610 Buttonwood Dr., Suite 200, Columbia, Missouri, 65201-3721, containing check no. D1174819 in the amount of $1827.42 in payment of the claim. |

| Count | Claim Number | Approximate Date | Mailing |
|-------|--------------|------------------|---------|
| 19 | 2003163 PH 01510 | June 14, 2003 | An envelope from Wisconsin Physician Services, in the Western District of Wisconsin, addressed to Sunrise Hill Therapeutic Community, 3610 Buttonwood Dr., Suite 200, Columbia, Missouri, 65201-3721, containing check no. G1153434 in the amount of $6695.41 in payment of the claim. |
| 20 | 2003247 PH 02773 | September 22, 2003 | An envelope from Wisconsin Physician Services, in the Western District of Wisconsin, addressed to Sunrise Hill Therapeutic Community, 3610 Buttonwood Dr., Suite 200, Columbia, Missouri, 65201-3721, containing check no. G1222451 in the amount of $8931.61 in payment of the claim. |
| 21 | 2003203 PH 02493 | July 26, 2003 | An envelope from Wisconsin Physician Services, in the Western District of Wisconsin, addressed to Sunrise Hill Therapeutic Community, 3610 Buttonwood Dr., Suite 200, Columbia, Missouri, 65201-3721, containing check no. G1180202 in the amount of $7756.72 in payment of the claim. |
| 22 | 2004079 PH 02553 | March 25, 2004 | An envelope from Wisconsin Physician Services, in the Western District of Wisconsin, addressed to Talon General Hospital, 3610 Buttonwood Dr., Suite 200, Columbia, Missouri, 65201-3721, containing check no. D1135139 in the amount of $484.42 in payment of the claim. |
| 23 | 2003113 PH 01525 | April 26, 2003 | An envelope from Wisconsin Physician Services, in the Western District of Wisconsin, addressed to Talon General Hospital, 3610 Buttonwood Dr., Suite 200, Columbia, Missouri, 65201-3721, containing check no. G1121427 in the amount of $2296.15 in payment of the claim. |
| 24 | 2003246 PH 01497 | September 8, 2003 | An envelope from Wisconsin Physician Services, in the Western District of Wisconsin, addressed to Talon General Hospital, 3610 Buttonwood Dr., Suite 200, Columbia, Missouri, 65201-3721, containing check no. G1211587 in the amount of $6750.31 in payment of the claim. |
| 25 | 2004215 PH 03632 | August 17, 2004 | An envelope from Wisconsin Physician Services, in the Western District of Wisconsin, addressed to De La Salle University Medical Center, 3610 Buttonwood Dr., Suite 20, Columbia, Missouri, 65201-3721, containing check no. D1241358 in the amount of $1812.43 in payment of the claim. |

| Count | Claim Number | Approximate Date | Mailing |
|-------|--------------|------------------|---------|
| 26 | 2004225 PH 01791 | August 21, 2004 | An envelope from Wisconsin Physician Services, in the Western District of Wisconsin, addressed to De La Salle University Medical Center, 3610 Buttonwood Dr., Suite 20, Columbia, Missouri, 65201-3721, containing check no. D1243504 in the amount of $845.97 in payment of the claim. |
| 27 | 2004208 PH 03175 | August 5, 2004 | An envelope from Wisconsin Physician Services, in the Western District of Wisconsin, addressed to De La Salle University Medical Center, 3610 Buttonwood Dr., Suite 20, Columbia, Missouri, 65201-3721, containing check no. D1235142 in the amount of $2356.26 in payment of the claim. |
| 28 | 2003168 PH 01004 | June 18, 2003 | An envelope from Wisconsin Physician Services, in the Western District of Wisconsin, addressed to St. Lukes Medical Center, 3610 Buttonwood Dr., Suite 200, Columbia, Missouri, 65201-3721, containing check no. G1155074 in the amount of $6964.05 in payment of the claim. |
| 29 | 2003296 PH 01649 | October 31, 2003 | An envelope from Wisconsin Physician Services, in the Western District of Wisconsin, addressed to St. Lukes Medical Center, 3610 Buttonwood Dr., Suite 200, Columbia, Missouri, 65201-3721, containing check no. D1025785 in the amount of $2152.50 in payment of the claim. |
| 30 | 2003288 PH 01447 | October 20, 2003 | An envelope from Wisconsin Physician Services, in the Western District of Wisconsin, addressed to St. Lukes Medical Center, 3610 Buttonwood Dr., Suite 200, Columbia, Missouri, 65201-3721, containing check no. D1016988 in the amount of $7450.82 in payment of the claim. |
| 31 | 2003205 PH 03224 | July 30, 2003 | An envelope from Wisconsin Physician Services, in the Western District of Wisconsin, addressed to St. Lukes Medical Center, 3610 Buttonwood Dr., Suite 200, Columbia, Missouri, 65201-3721, containing check no. G1182464 in the amount of $3982.04 in payment of the claim. |
| 32 | 2004127 PH 01010 | May 14, 2004 | An envelope from Wisconsin Physician Services, in the Western District of Wisconsin, addressed to Cardinal Santos Medical Center, 3610 Buttonwood Dr., Suite 200, Columbia, Missouri, 65201-3721, containing check no. D1175928 in the amount of $82,518.71 in payment of the claim. |

(All in violation of Title 18, United States Code, Section 1341, and Title 18, United States Code, Section 2).

## COUNT 33

## CONSPIRACY

1.      The factual allegations in paragraph 1 of Count 1 of this Indictment are incorporated by reference and realleged as though fully set forth herein.

2.      From on or about October 1, 1998 and continuing thereafter until on or about June 20, 2000, in the Western District of Wisconsin and elsewhere, the defendants,

### HEALTH VISIONS CORPORATION and
### THOMAS ARTHUR LUTZ,

conspired and agreed with others known and unknown to the grand jury, to knowingly and intentionally commit the offense of unlawful kickbacks in violation of Title 42, United States Code, Section 1320a-7b(b)(1)(A), against the United States of America.

## OBJECT OF THE CONSPIRACY

3.      The object of the conspiracy was for defendants LUTZ and HVC to receive monetary remuneration for the referral of patients to a doctor, known to the grand jury and referred to here as "Dr. A", for medical services in violation of Title 42, United States Code, Section 1320a-7b(b)(1)(A) and to defraud the United States of America.

## METHOD AND MEANS OF CONSPIRACY

4.      It was part of the conspiracy that LUTZ, as an administrator for HVC, entered into an agreement with Dr. A, to refer medical patients, including TRICARE

13

beneficiaries, to Dr. A.  As part of the agreement, Dr. A agreed to rebate fifty percent (50%)

of the amount of the claim for services he provided to TRICARE patients back to HVC for

sending clients to Dr. A's medical facility.  It was further part of the conspiracy that Dr. A's

medical facility became one of two preferred facilities for HVC in the Olongapo region of

the Republic of the Philippines.

     5.     It was a further part of the conspiracy that HVC referred TRICARE

beneficiaries to Dr. A and his facility for hospitalization and the beneficiaries received

medical treatment, including hospitalization.

     6.     It was further part of the conspiracy that once the treatment was

completed, Dr. A compiled a bill for services.  Dr. A then doubled the amount of the bill for

services rendered and submitted the bill to HVC.  HVC then paid Dr. A the face value of

the doubled bill.  Dr. A then paid back to HVC 50% of the amount paid to him by HVC.

     7.     It was a further part of the conspiracy that HVC then submitted a bill for

services by Dr. A to WPS in Madison, Wisconsin, in the Western District of Wisconsin, for

payment of the claim.

     8.     The conspiracy  resulted in HVC submitting approximately 105 claims and

unlawfully receiving the equivalent of approximately $22,271.36 in United States Currency

in unlawful kickbacks.

<u>OVERT ACTS</u>

     9.     In furtherance of the conspiracy and to effect the objects of the conspiracy,

the following overt acts, among others, were committed in the Western District of

14

Wisconsin and elsewhere:

      (a)    On or about May 25, 2000, defendants HVC and LUTZ caused and aided in causing the delivery of a claim upon TRICARE, addressed to Wisconsin Physicians Service, P.O. Box 7985, Madison, Wisconsin 53707, for payment of medical services rendered from February 29, 2000 through March 1, 2000 to a beneficiary, claim no. 2000146 PH 01617.

      (b)    On or about May 25, 2000, defendants HVC and LUTZ caused and aided in causing the delivery of a claim upon TRICARE, addressed to Wisconsin Physicians Service, P.O. Box 7985, Madison, Wisconsin 53707, for payment of medical services rendered from March 3, 2000 through March 6, 2000 to a beneficiary, claim no. 2000146 PH 01615.

      (c)    On or about May 25, 2000, defendants HVC and LUTZ caused and aided in causing the delivery of a claim upon TRICARE, addressed to Wisconsin Physicians Service, P.O. Box 7985, Madison, Wisconsin 53707, for payment of medical services rendered from March 28, 2000 through March 31, 2000 to a beneficiary, claim no. 2000146 PH 01616.

      (d)    On or about June 2, 2000, defendants HVC and LUTZ caused and aided in causing delivery of a claim upon TRICARE, addressed to Wisconsin Physicians Service, P.O. Box 7985, Madison, Wisconsin 53707, for payment of medical services rendered from April 7, 2000 through April 14, 2000 to a beneficiary, claim no. 2000154 PH 02008.

15

(e)    On or about June 5, 2000, defendants HVC and LUTZ caused and aided in causing delivery of a claim upon TRICARE, addressed to Wisconsin Physicians Service, P.O. Box 7985, Madison, Wisconsin 53707, for payment of medical services rendered from May 2, 2000 through May 9, 2000 to a beneficiary, claim no. 2000157 PH 02662.

(f)    On or about June 20, 2000 defendants HVC and LUTZ caused and aided in causing delivery of a claim upon TRICARE, addressed to Wisconsin Physicians Service, P.O. Box 7985, Madison, Wisconsin 53707, for payment of medical services rendered from April 24, 2000 through April 28, 2000 to a beneficiary, claim no. 2000172 PH 02632.

(All in violation of Title 18, United States Code, Section 371 and Title 18, United States Code, Section 2).

## COUNTS 34 - 73

## FALSE CLAIMS

1.    The factual allegations in paragraphs 1 through 5 of Count 1 of this Indictment are incorporated by reference and realleged as though fully set forth herein.

2.    On or about the following dates in the Western District of Wisconsin, the defendants,

HEALTH VISIONS CORPORATION and
THOMAS ARTHUR LUTZ,

knowingly and willfully made and caused to be made a claim for medical services upon

16

Wisconsin Physicians Service, the contractor for TRICARE, a program of the United States

Department of Defense, a department and agency of the United States, knowing such

claims to be false, fictitious and fraudulent:

| Count | Claim Number | Approximate Date | Claim |
|-------|--------------|------------------|-------|
| 34 | 2001194 PH 01629 | July 13, 2001 | Medical services supposedly rendered from May 3, 2001 through May 12, 2001 to a beneficiary, in the amount of $4559.55, 225% in excess of the amount which could be legitimately claimed, whereas in fact and in truth and as the defendants well knew, such amount claimed for the medical services was false, fictitious and fraudulent. |
| 35 | 2001145 PH 02631 | May 25, 2001 | Medical services supposedly rendered from March 29, 2001 through March 30, 2001 to a beneficiary, in the amount of $3353.38, 309% in excess of the amount which could be legitimately claimed, whereas in fact and in truth and as the defendants well knew, such amount claimed for the medical services was false, fictitious and fraudulent. |
| 36 | 2001134 PH 01001 | May 14, 2001 | Medical services supposedly rendered from April 11, 2001 through April 17, 2001 to a beneficiary, in the amount of $7949.72, 516% in excess of the amount which could be legitimately claimed, whereas in fact and in truth and as the defendants well knew, such amount claimed for the medical services was false, fictitious and fraudulent. |
| 37 | 2004176 PH 01762 | June 24, 2004 | Medical services supposedly rendered from August 21, 2003 through August 23, 2003 to a beneficiary, in the amount of $735.51, 270% in excess of the amount which could be legitimately claimed, whereas in fact and in truth and as the defendants well knew, such amount claimed for the medical services was false, fictitious and fraudulent. |
| 38 | 2003274 PH 01808 | October 1, 2003 | Medical services supposedly rendered from July 7, 2003 through July 10, 2003 to a beneficiary, in the amount of $4027.23, 220% in excess of the amount which could be legitimately claimed, whereas in fact and in truth and as the defendants well knew, such amount claimed for the medical services was false, fictitious and fraudulent. |

17

| Count | Claim Number | Approximate Date | Claim |
|-------|--------------|------------------|-------|
| 39 | 2003267 PH 02497 | September 24, 2003 | Medical services supposedly rendered from May 21, 2003 through May 23, 2003 to a beneficiary, in the amount of $2736.99, 216% in excess of the amount which could be legitimately claimed, whereas in fact and in truth and as the defendants well knew, such amount claimed for the medical services was false, fictitious and fraudulent. |
| 40 | 2004079 PH 02553 | March 19, 2004 | Medical services supposedly rendered from November 16, 2003 through November 17, 2003 to a beneficiary, in the amount of $72.68, 257% in excess of the amount which could be legitimately claimed, whereas in fact and in truth and as the defendants well knew, such amount claimed for the medical services was false, fictitious and fraudulent. |
| 41 | 2003113 PH 01525 | April 23, 2003 | Medical services supposedly rendered from May 13, 2002 through May 14, 2002 to a beneficiary, in the amount of $2603.98, 1321% in excess of the amount which could be legitimately claimed, whereas in fact and in truth and as the defendants well knew, such amount claimed for the medical services was false, fictitious and fraudulent. |
| 42 | 2003246 PH 01497 | September 3, 2003 | Medical services supposedly rendered from May 3, 2003 through May 6, 2003 to a beneficiary, in the amount of $226.32, 213% in excess of the amount which could be legitimately claimed, whereas in fact and in truth and as the defendants well knew, such amount claimed for the medical services was false, fictitious and fraudulent. |
| 43 | 2004215 PH 03632 | August 2, 2004 | Medical services supposedly rendered from August 7, 2003 through August 13, 2003 to a beneficiary, in the amount of $783.03, 291% in excess of the amount which could be legitimately claimed, whereas in fact and in truth and as the defendants well knew, such amount claimed for the medical services was false, fictitious and fraudulent. |
| 44 | 2004225 PH 01791 | August 12, 2004 | Medical services supposedly rendered from January 27, 2004 through January 29, 2004 to a beneficiary, in the amount of $765.35, 369% in excess of the amount which could be legitimately claimed, whereas in fact and in truth and as the defendants well knew, such amount claimed for the medical services was false, fictitious and fraudulent. |

18

| Count | Claim Number | Approximate Date | Claim |
|-------|--------------|------------------|-------|
| 45 | 2004208 PH 03175 | July 26, 2004 | Medical services supposedly rendered from August 5, 2003 through August 7, 2003 to a beneficiary, in the amount of $324.25, 485% in excess of the amount which could be legitimately claimed, whereas in fact and in truth and as the defendants well knew, such amount claimed for the medical services was false, fictitious and fraudulent. |
| 46 | 2003168 PH 01004 | June 17, 2003 | Medical services supposedly rendered from February 11, 2003 through February 15, 2003 to a beneficiary, in the amount of $3908.27, 331% in excess of the amount which could be legitimately claimed, whereas in fact and in truth and as the defendants well knew, such amount claimed for the medical services was false, fictitious and fraudulent. |
| 47 | 2003296 PH 01649 | October 23, 2003 | Medical services supposedly rendered from January 6, 2003 through January 7, 2003 to a beneficiary, in the amount of $466.79, 293% in excess of the amount which could be legitimately claimed, whereas in fact and in truth and as the defendants well knew, such amount claimed for the medical services was false, fictitious and fraudulent. |
| 48 | 2003288 PH 01447 | October 15, 2003 | Medical services supposedly rendered from March 24, 2003 through March 25, 2003 to a beneficiary, in the amount of $4018.66, 263% in excess of the amount which could be legitimately claimed, whereas in fact and in truth and as the defendants well knew, such amount claimed for the medical services was false, fictitious and fraudulent. |
| 49 | 2003205 PH 03224 | July 24, 2003 | Medical services supposedly rendered from March 18, 2003 through March 22, 2003 to a beneficiary, in the amount of $2893.11, 265% in excess of the amount which could be legitimately claimed, whereas in fact and in truth and as the defendants well knew, such amount claimed for the medical services was false, fictitious and fraudulent. |
| 50 | 2003337 PH 03276 | December 3, 2003 | Medical services supposedly rendered from July 17, 2003 through July 21, 2003 to a beneficiary, in the amount of $33347.16, 255% in excess of the amount which could be legitimately claimed, whereas in fact and in truth and as the defendants well knew, such amount claimed for the medical services was false, fictitious and fraudulent. |

19

| Count | Claim Number | Approximate Date | Claim |
|-------|--------------|------------------|-------|
| 51 | 2003171 PH 01279 | June 20, 2003 | Medical services supposedly rendered from December 23, 2002 through December 24, 2002 to a beneficiary, in the amount of $5965.60, 232% in excess of the amount which could be legitimately claimed, whereas in fact and in truth and as the defendants well knew, such amount claimed for the medical services was false, fictitious and fraudulent. |
| 52 | 2001060 PH 01813 | March 1, 2001 | Medical services supposedly rendered from January 16, 2001 through January 17, 2001 to a beneficiary, in the amount of $151.90, 247% in excess of the amount which could be legitimately claimed, whereas in fact and in truth and as the defendants well knew, such amount claimed for the medical services was false, fictitious and fraudulent. |
| 53 | 2004188 PH 02929 | July 6, 2004 | Medical services supposedly rendered from October 1, 2003 through October 31, 2003 to a beneficiary, in the amount of $2824.14, 280% in excess of the amount which could be legitimately claimed, whereas in fact and in truth and as the defendants well knew, such amount claimed for the medical services was false, fictitious and fraudulent. |
| 54 | 2002121 PH 01717 | May 1, 2002 | Medical services supposedly rendered from February 15, 2002 through February 28, 2002 to a beneficiary, in the amount of $1502.04, 370% in excess of the amount which could be legitimately claimed, whereas in fact and in truth and as the defendants well knew, such amount claimed for the medical services was false, fictitious and fraudulent. |
| 55 | 2004131 PH 01358 | May 10, 2004 | Medical services supposedly rendered from September 24, 2003 through September 30, 2003 to a beneficiary, in the amount of $1187.96, 592% in excess of the amount which could be legitimately claimed, whereas in fact and in truth and as the defendants well knew, such amount claimed for the medical services was false, fictitious and fraudulent. |
| 56 | 2003163 PH 01510 | June 12, 2003 | Medical services supposedly rendered from December 1, 2002 through December 31, 2002 to a beneficiary, in the amount of $6224.97, 270% in excess of the amount which could be legitimately claimed, whereas in fact and in truth and as the defendants well knew, such amount claimed for the medical services was false, fictitious and fraudulent. |

| Count | Claim Number | Approximate Date | Claim |
|-------|-------------|------------------|-------|
| 57 | 2003247 PH 02773 | September 4, 2003 | Medical services supposedly rendered from April 1, 2003 through April 30, 2003 to a beneficiary, in the amount of $5208.27, 252% in excess of the amount which could be legitimately claimed, whereas in fact and in truth and as the defendants well knew, such amount claimed for the medical services was false, fictitious and fraudulent. |
| 58 | 2003203 PH 02493 | July 22, 2003 | Medical services supposedly rendered from February 1, 2003 through February 28, 2003 to a beneficiary, in the amount of $4986.81, 269% in excess of the amount which could be legitimately claimed, whereas in fact and in truth and as the defendants well knew, such amount claimed for the medical services was false, fictitious and fraudulent. |
| 59 | 2002122 PH 01705 | May 2, 2002 | Medical services supposedly rendered on or about March 9, 2002 to a beneficiary, in the amount of $653.90, whereas in fact and in truth and as the defendants well knew, such medical services had not been rendered as claimed and such claim was false, fictitious and fraudulent. |
| 60 | 2002123 PH 01244 | May 3, 2002 | Medical services supposedly rendered on or about March 18, 2002 to a beneficiary, in the amount of $962.82, whereas in fact and in truth and as the defendants well knew, such medical services had not been rendered as claimed and such claim was false, fictitious and fraudulent. |
| 61 | 2002164 PH 01721 | June 13, 2002 | Medical services supposedly rendered on or about April 18, 2002 to a beneficiary, in the amount of $962.82, whereas in fact and in truth and as the defendants well knew, such medical services had not been rendered as claimed and such claim was false, fictitious and fraudulent. |
| 62 | 2002191 PH 01120 | July 10, 2002 | Medical services supposedly rendered on or about May 11, 2002 to a beneficiary, in the amount of $1881.70, whereas in fact and in truth and as the defendants well knew, such medical services had not been rendered as claimed and such claim was false, fictitious and fraudulent. |

| Count | Claim Number | Approximate Date | Claim |
|-------|--------------|------------------|-------|
| 63 | 2002198 PH 02438 | July 17, 2002 | Medical services supposedly rendered on or about May 20, 2002 to a beneficiary, in the amount of $2808.47, whereas in fact and in truth and as the defendants well knew, such medical services had not been rendered as claimed and such claim was false, fictitious and fraudulent. |
| 64 | 2002112 PH 02840 | April 22, 2002 | Medical services supposedly rendered on or about February 6, 2002 to a beneficiary, in the amount of $620.12, whereas in fact and in truth and as the defendants well knew, such medical services had not been rendered as claimed and such claim was false, fictitious and fraudulent. |
| 65 | 2002112 PH 02842 | April 22, 2002 | Medical services supposedly rendered on or about February 13, 2002 to a beneficiary, in the amount of $718.20, whereas in fact and in truth and as the defendants well knew, such medical services had not been rendered as claimed and such claim was false, fictitious and fraudulent. |
| 66 | 2002106 PH 02158 | April 16, 2002 | Medical services supposedly rendered on or about February 20, 2002 to a beneficiary, in the amount of $661.20, whereas in fact and in truth and as the defendants well knew, such medical services had not been rendered as claimed and such claim was false, fictitious and fraudulent. |
| 67 | 2002106 PH 02152 | April 16, 2002 | Medical services supposedly rendered on or about February 27, 2002 to a beneficiary, in the amount of $716.80, whereas in fact and in truth and as the defendants well knew, such medical services had not been rendered as claimed and such claim was false, fictitious and fraudulent. |
| 68 | 2002116 PH 01111 | April 26, 2002 | Medical services supposedly rendered on or about March 6, 2002 to a beneficiary, in the amount of $620.12, whereas in fact and in truth and as the defendants well knew, such medical services had not been rendered as claimed and such claim was false, fictitious and fraudulent. |
| 69 | 2002112 PH 02891 | April 22, 2002 | Medical services supposedly rendered on or about February 15, 2002 to a beneficiary, in the amount of $458.93, whereas in fact and in truth and as the defendants well knew, such medical services had not been rendered as claimed and such claim was false, fictitious and fraudulent. |

| Count | Claim Number | Approximate Date | Claim |
|-------|--------------|------------------|-------|
| 70 | 2002109 PH 01060 | April 19, 2002 | Medical services supposedly rendered on or about February 26, 2002 to a beneficiary, in the amount of $729.65, whereas in fact and in truth and as the defendants well knew, such medical services had not been rendered as claimed and such claim was false, fictitious and fraudulent. |
| 71 | 2002128 PH 01185 | May 8, 2002 | Medical services supposedly rendered on or about March 13, 2002 to a beneficiary, in the amount of $498.95, whereas in fact and in truth and as the defendants well knew, such medical services had not been rendered as claimed and such claim was false, fictitious and fraudulent. |
| 72 | 2002184 PH 02282 | July 3, 2002 | Medical services supposedly rendered on or about March 21, 2002 to a beneficiary, in the amount of $408.20, whereas in fact and in truth and as the defendants well knew, such medical services had not been rendered as claimed and such claim was false, fictitious and fraudulent. |
| 73 | 2002150 PH 02089 | May 30, 2002 | Medical services supposedly rendered on or about March 27, 2002 to a beneficiary, in the amount of $498.99, whereas in fact and in truth and as the defendants well knew, such medical services had not been rendered as claimed and such claim was false, fictitious and fraudulent. |
| 74 | 2004127 PH 01010 | May 6, 2004 | Medical services supposedly rendered on or about May 31, 2003 to June 11, 2003 to a beneficiary, in the amount of $82,518.71, whereas in fact and in truth and as the defendants well knew, such medical services had not been rendered as claimed and such claim was false, fictitious and fraudulent. |

(All in violation of Title 18, United States Code, Section 287, and Title 18, United States Code, Section 2).

COUNT 75

FORFEITURE

23

1.      The allegations of paragraphs 1 through 7 in Count 1 are realleged for this count for the purpose of alleging that certain property is subject to forfeiture pursuant to Title 18, United States Code, Sections 982(a)(7) and (1).

2.      Upon conviction for violation of Title 18, United States Code Section 1341, as described paragraphs 1 through 7 and in Counts 1 through 32 of this indictment, defendants HVC and LUTZ shall forfeit to the United States all property, real and personal, constituting or derived, directly or indirectly from proceeds traceable to the commission of said offenses pursuant to Title 18, United States Code, Section 982(a)(2), including but not limited to a sum of money equal to $910,910.60 in United States currency, representing the amount of proceeds obtained as a result of the offense, Title 18 United States Code, Section 1341, for which the defendants are jointly and severally liable, or an amount determined at trial.

3.      If any of the property described above as being subject to forfeiture, pursuant to Title 21, United States Code, Section 853, as a result of any act or omission of the defendants:

> (a)     Cannot be located upon the exercise of due diligence;
>
> (b)     Has been transferred or sold to, or deposited with, a third party;
>
> (c)     Has been placed beyond the jurisdiction of the court;
>
> (d)     Has been substantially diminished in value; or
>
> (e)     Has been commingled with other property which cannot subdivide

without difficulty;

it is the intent of the United States, pursuant to Title 21, United States Code, Section 853(p) as incorporated by reference in Title 18, United States Code, Section 982(b)(1), to forfeit any other of defendants' property up to the value listed above.

(In violation of Title 18, United States Code, Section 982).

A TRUE BILL

PRESIDING JUROR

Stephen P. Sinnott
Acting United States Attorney

Indictment returned: ___07/13/05___

25

## WARRANT FOR ARREST

| **United States District Court** | **DISTRICT** WESTERN DISTRICT OF WISCONSIN | |
|---|---|---|
| United States of America<br><br>v.<br><br>Thomas Arthur Lutz,<br><br>Defendant. | DOCKET NO.<br><br>05-CR-072-C<br>Second Superseding | MAGISTRATE JUDGE CASE NO. |
| | NAME AND ADDRESS OF INDIVIDUAL TO BE ARRESTED:<br><br>Thomas Arthur Lutz | |

Warrant Issued on the Basis of:

[X] Indictment    [] Order of Court    [] Information    [] Complaint

TO:  Any Authorized Law Enforcement Officer.

District of Arrest:                                               City:

**YOU ARE HEREBY COMMANDED** to arrest the above-named person and bring that person before the United States District Court to answer to the charge(s) listed below.

### DESCRIPTION OF CHARGES

conspiracy, aiding & abetting, mail fraud, false claims

IN VIOLATION OF 18 U.S.C. Sections 371, 2, 1341, 287

Bail:  DETENTION REQUESTED BY THE UNITED STATES ATTORNEY'S OFFICE

Other Conditions of Release:

| Ordered By:          Federal Judge/Magistrate Judge | Date Order: |
|---|---|
| Clerk of Court:                (By) Deputy Clerk<br>**THERESA M. OWENS**        *LuAnn Kampen* | Date Issued:      JUL 1 5 2005 |

### RETURN

This Warrant was received and executed with the arrest of the above-named person.

| Date Received: | Date Executed: |
|---|---|
| Name and Title of Arresting Officer: | Signature of Arresting Officer: |

DOCKET #

IN THE UNITED STATES DISTRICT COURT

U.S. DISTRICT COURT
WEST DIST OF WISCONSIN

FOR THE WESTERN DISTRICT OF WISCONSIN

APR 1 1 2006

FILED
THERESA M. OWENS, CLERK

|  |  |  |
|---|---|---|
| UNITED STATES OF AMERICA | ) | **SEALED** CASE# |
|  | ) |  |
|  | ) |  |
|  | ) | Case No. 05-CR-072-C |
| v. | ) |  |
|  | ) | Order Unsealing Arrest |
|  | ) | Warrant and Second Superceding |
|  | ) | Indictment for Limited Purposes |
| HEALTH VISIONS CORPORATION and | ) |  |
| THOMAS ARTHUR LUTZ, | ) |  |
|  | ) |  |
| Defendants. | ) |  |
|  | ) |  |

IT IS ORDERED that the Second Superceding Indictment and Arrest

Warrant in the above-captioned matter be unsealed for the limited purpose of allowing the

Untied States to provide copies of these documents to any foreign law enforcement officials

necessary to effectuate the arrest, capture, and transfer to the United States of the

defendant, THOMAS ARTHUR LUTZ, in this matter.

IT IS FURTHER ORDERED that the Second Superceding Indictment and Arrest

Warrant in the above captioned matter be resealed, and remain sealed, until the

apprehension of the defendant THOMAS ARTHUR LUTZ.

IT IS SO ORDERED THIS ___11^{TH}___ DAY OF ___APRIL___, 2006.

_____
STEPHEN L. CROCKER
United States Magistrate Judge